FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NOV 2 7 1992

*Robert M. March*

| | | |
|---|---|---|
| DWIGHT DURAN, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Civil Action No. 77-721-JB |
| Bruce King, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

THIRTY-THIRD REPORT OF THE SPECIAL MASTER--
FINDINGS OF SUBSTANTIAL COMPLIANCE WITH RESPECT TO STAFFING
AND LIVING CONDITIONS AT THE NEW MEXICO WOMEN'S CORRECTIONAL
FACILITY AND WITH RESPECT TO INMATE ACTIVITY (APART FROM SPECIAL
EDUCATION) AT CENTRAL NEW MEXICO CORRECTIONAL FACILITY

Introduction

In his Twenty-Ninth Report, filed on January 28, 1992, the Special Master declined to make findings of substantial compliance in the areas of staffing and living conditions at the New Mexico Women's Correctional Facility (NMWCF). See Report at 4. Likewise, the Special Master declined to make a finding of substantial compliance in the area of inmate activity at Central New Mexico Correctional Facility (CNMCF). Id.

Staffing at NMWCF

On April 8, 1992, defendants submitted a staffing plan for the facility. That plan, which is dated March 16, 1992, reflects the same number of uniformed staff that were employed at the time of the audit preceding the Twenty-Ninth Report. See Exhibit. It is important to note, however, that the Special Master's decision to

refrain from making a finding of substantial compliance in this area in the Twenty-Ninth Report did not result from a finding that correctional officer staffing at NMWCF was inadequate; rather, it was based on the facts that staffing appeared to be marginal and that the Special Master lacked the correctional expertise to evaluate the adequacy of the then-existing staffing pattern.

The defendants' March 16, 1992 custody staffing pattern was prepared by Alan Shuman, who currently serves as the Director of the New Mexico Corrections Department's (NMCD) Corrections Academy. Mr. Shuman has had extensive experience with the NMCD and is not affiliated in any way with Corrections Corporation of America, which operates NMWCF. By letter of June 19, 1992, Mr. Shuman communicated the following certification to the Special Master:

> In my opinion the custody staffing pattern for the New Mexico Women's Correctional Facility dated March 16, 1992, which I developed, provides appropriate numbers of custody staff to meet institutional requirements as they existed at the time of the pattern's development.

Based on Mr. Shuman's certification, the Special Master will make a finding of substantial compliance in the area of staffing at NMWCF.

### Living Conditions at NMWCF

The decision to refrain from making a finding of substantial compliance in the area of living conditions at NMWCF in the Twenty-Ninth Report was based on the parties' disagreement with respect to compliance with paragraph 4 of the Court's order on this subject. That paragraph reads, in relevant part, as follows:

2

> If dormitories or multiple occupancy rooms are utilized, they will provide a minimum of ... 60 square feet of living space per person, excluding shower and lavatory facilities and dayroom space.

There are four dormitories, which house minimum security prisoners, at NMWCF. Each dormitory contains approximately 1,400 square feet, excluding dayroom and lavatory space, and contains 20 cubicles constructed of 3'4" high cinder block walls. The interior floor area of each cubicle measures between 33 and 35 square feet. The parties' respective positions regarding compliance with paragraph 4 are as follows:

> Plaintiffs: The plaintiffs' assert that the 33 to 35 square foot interior living space of each cubicle does not fulfill paragraph 4(A) of the Living Conditions Policy Statement which requires a minimum of 60 square feet of living space per person.

> Defendants: The defendants assert that 20 cubicles as presently arranged within 1400 square feet satisfies the living space requirement.

On or about July 27, 1992, the parties reached agreement on this issue, making resolution by the Special Master unnecessary. The parties' agreement provides for removal of the existing 3'4" cinder block cubicle walls and the substitution of a cubicle configuration meeting the following requirements:

> 1. Each cubicle will have an interior area of between 49.5 and 51 square feet.

> 2. Each cubicle will be constructed with 4'6" high partitions made of a combination of wood, fabric or board, which will be of solid construction.

> 3. There will be 20 cubicles per dormitory.

> 4.  Each  cubicle  will  be  provided  with
> electricity  through  the  installation  of  a
> standard  electrical  outlet  which  provides
> simultaneous access to two plugs. By means of
> these  outlets,  defendants  will  provide
> services for appliances such as radios, table
> lights,  irons  and  hair  dryers,  subject  to
> reasonable  restrictions  given  the  dormitory
> nature of the housing units and the security
> needs of the institution.
>
> 5. The cubicle configuration and construction
> will  meet  all  applicable  fire  and  safety
> standards.

The parties further agreed that these modifications, together with
other itemized dormitory living condition modifications to which
the parties agreed informally, "will provide a factual basis upon
which the Special Master may make a recommendation of substantial
compliance in dormitory living conditions for New Mexico Women's
Correctional Facility." Accordingly, the Special Master will find
that defendants are in substantial compliance in the area of living
conditions at NMWCF.

### Inmate Activity at CNMCF

On July 14, 1992, counsel, departmental officials, and the
Special Master conducted an audit of inmate activity at CNMCF. At
the conclusion of that audit, both parties agreed that programmatic
activity, particularly in the area of education, had improved
significantly since the audit preceding the Twenty-Ninth Report.
Problems remained, however, in the provision of special education
programs to prisoners requiring these programs.

Paragraph 5 of the Court's order on inmate activity requires
that "(a)ll inmates classified as needing and desiring some type of
education will be provided an appropriate educational program ...

comparable to that in the public school system in New Mexico in quality, staff, supplies, equipment, institutional materials and programs <u>including special</u> and bilingual <u>educational programs</u>" (emphasis added). Other provisions of the consent decree also address the issue of special education. These include paragraph 1 of the Court's order on mental health care ("All inmates who, by reason of mental illness or mental retardation, require special housing and/or programs, will be identified and arrangements will be made for such housing and/or programs") and paragraph 7 of the Court's order on classification ("Provision will be made for appropriate programs and services for inmates with special needs, e.g., inmates who are ... emotionally disturbed, mentally retarded, or who pose high risks or require special protection. Regular data will be collected and maintained on such populations and programs. Services will be adapted as needed.")

The extent of the population requiring special education services has not yet been determined, although efforts toward this end are being made at this time. Moreover, little if any organized educational programming for prisoners requiring these services is being offered.

Because of the location of the Mental Health Center, which houses seriously mentally ill, male prisoners at CNMCF, it is possible that the defendants will decide to centralize their special education programs for men at that institution.[1] Although

_____

[1] This is not to suggest that all prisoners requiring special education are mentally ill. It is true, however, that a significant
(continued...)

the issue of special education has not been identified as a system-wide issue, the area of mental health has been so denominated. <u>See</u> the parties' June 10, 1991 stipulation, §III.E. Moreover, the identification of prisoners requiring special education programming and the provision of that programming will require efforts at the Reception and Diagnostic Center for males at Western New Mexico Correctional Facility as well as at other institutions throughout the NMCD. Thus, a plan for remedial action that addresses diagnostic and testing activities at the Reception and Diagnostic Center and implementation of that plan at CNMCF should provide a basis for resolving outstanding issues in this area throughout the NMCD.

For all these reasons, the Special Master has concluded that a finding of substantial compliance with respect to provision of special education programming at CNMCF would be premature at this juncture. Rather, he will continue to work with the parties in an effort to develop agreed-upon procedures for identifying prisoners who require special education and for offering the necessary programming to these prisoners. In the meantime, however, overall improvement in the general educational program at CNMCF warrants a finding of substantial compliance at this time.

<u>Recommended Period of Self-Monitoring by Defendants</u>

The parties' June 10, 1991 stipulation requires the Special Master to recommend a period of self-monitoring by defendants

---

[1]/(...continued)
number of these prisoners may carry dual diagnoses of mental illness and mental retardation or developmental disability.

following findings of substantial compliance. With respect to NMWCF and CNMCF, this period must be between six months and one year. See June 10, 1991 stipulation, §III.D.i.

The Special Master believes that one report by defendants following self-monitoring will be sufficient to satisfy any concerns regarding continued substantial compliance in the area of staffing at NMWCF. Thus, the Special Master recommends that defendants be required to file a report on this subject, based on self-monitoring for a period of six months, on February 11, 1993.

Likewise, a single report following reconfiguration of the four dormitories at NMWCF should be sufficient to establish continuing substantial compliance in the area of living conditions at that institution. This report should be filed six months following certification of completion of the reconfiguration of dormitories at NMWCF.[2]

With respect to inmate activity at CNMCF, the Special Master recommends that defendants be required to file two reports following self-monitoring. The first of these reports should be filed on January 15, 1993, and the second report should be filed on May 17, 1993. With respect to educational programming, the first of these reports will describe the state of affairs following the commencement of the Fall semester of 1992, and the second will be filed after that semester has ended and well after the 1993 school

---

[2] Defendants have agreed to provide the Special Master with a certification of completion of the required renovations. Upon receipt of that certification, the special master will notify the court and recommend a precise date for defendants' submission of their self-audit report on this subject.

year has begun. Both reports should address all aspects of the court's order on inmate activity at CNMCF.

<u>Findings and Recommendations</u>

1. The Special Master finds that defendants are in substantial compliance in the area of staffing at NMWCF.

2. The Special Master finds that defendants are in substantial compliance in the area of living conditions at NMWCF.

3. The Special Master finds that defendants are in substantial compliance in the area of inmate activity, except for the area of special education programming, at CNMCF.

4. The Special Master recommends that defendants be required to file reports, following self-monitoring, in the areas of staffing at NMWCF on February 11, 1993, and that they be required to file reports, following self-monitoring, in the area of inmate activity (except special education) at CNMCF on January 15, 1993 and May 17, 1993.

5. The Special Master recommends that defendants be required to file a report on living conditions at NMWCF six months following certification of completion of all renovations of dormitories at that institution.

6. During the periods of self-monitoring recommended in this report, plaintiffs' counsel should enjoy all rights of access to facilities, records, and reports, consultation with prisoners, and effective communication with their clients recommended by the Special Master in his 29th Report. The specific recommendations on

these   subjects   set   forth   on   pages   7-8   of   that   report   are incorporated herein by reference.

Respectfully submitted,

Vincent M. Nathan
Special Master

EXHIBIT

## NEW MEXICO WOMEN'S CORRECTIONAL FACILITY
## CUSTODY STAFFING PATTERN
## Revised March 16, 1992

| 7 Day Posts (CO) | M | D | E |
|---|---|---|---|
| Master Control | 1 | 1 | 1 |
| A Control | 1 | 1 | 1 |
| A Utility | 1 | 1 | 1 |
| B Control | 1 | 1 | 1 |
| B Utility | 1* | 1 (pull) | 1 (pull) |
| D Control | 1 | 1 | 1 |
| D Utility | 1 | 1 | 1 |
| Patrol | 1* | 1 | 1 |
| Recreation | 0 | 0 | 1 |
| | 8 | 8 | 9 |

```
23 Reg. Posts x   1.72  = 39.56
 2 "Shut." Posts x 1.00 =   2.00
                           41.56
```

| 5 Day Posts (CO) | D |
|---|---|
| Education | 1 |
| Laundry/Sallyport | 1 |
| Visiting Room | 1 |
| Commissary/Prop | 1 |
| Work Detail | 1 + (1 provided by WNMCF) = 2 |
| Intake/Trans | 1 |
| Transportation | 1 |
| | 7 |

```
7 Posts x 1.20 = 8.40
```

Total C.O.s Required  =  49.96 (50)

---

| 7 Day Posts (Shift Superv) | M | D | E |
|---|---|---|---|
| Shift Supervisor | 1 | 1 | 1 |

```
3 Posts x 1.72 = 5.16  (5)
```

---

Page 1 of 2

## NEW MEXICO WOMEN'S CORRECTIONAL FACILITY
## CUSTODY STAFFING PATTERN

5 Day Post (Chief)                                          D

Chief of Security                                           1

1 Post x 1.20 = 1.20 (1)


### SUMMARY

|                        |       | Recommended | Current |
|------------------------|-------|-------------|---------|
| Correctional Officers  |       | 50          | 50      |
| Shift Supervisors      |       | 5           | 5       |
| Chief of Security      |       | 1           | 1       |
|                        | Total | 56          | 56      |

Note:  By agreement, WNMCF provides 1 Correctional Officer to the Women's Facility to supervise an outside work detail.  This post is not figured into the staffing pattern for the Women's Facility.

**Page 2 of 2**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing Thirty-Third Report of the Special Master has been forwarded, by ordinary United States mail, this *25th* day of *November* 1992 to the following:

Dan Gonzales, Esq.
P. O. Box 2286
Las Cruces, NM   88004-2286

Elizabeth Alexander, Esq.
National Prison Project
1875 Connecticut Ave., N.W.
Suite 410
Washington, D.C.     20009

Mark Donatelli, Esq.
Rothstein, Walther, Donatelli,
 Hughes, Dahlstrom & Cron
Sanbusco Center
500 Montezuma Avenue, Suite 101
Post Office Box 8180
Santa Fe, New Mexico 87504-8180

Robert T. Booms
Assistant Attorney General
Post Office Drawer 1508
Bataan Memorial Building
Santa Fe, NM   87504-1508

Hon. Tom Udall, Attorney
 General
State of New Mexico
Office of the Attorney General
Post Office Drawer 1508
Bataan Memorial Building
Santa Fe, New Mexico     87504

Nick D'Angelo
New   Mexico   Department   of
Corrections
Highway 14
Building A
P. O. 27116
Santa Fe, NM   87502-7116

Richard A. Winterbottom
Michael L. Stout & Associates
718 Central Avenue, SW
Albuquerque, NM   87102


Vincent M. Nathan
Special Master