IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DWIGHT DURAN, et al.,

     Plaintiffs,

vs.                                                                          Civ. No. 77-721 KG/KK

SUSANA MARTINEZ, Governor, et al.,

     Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiffs' Motion to Enforce Settlement

Agreement and for Order Awarding Attorneys' Fees and Litigation Expenses (Motion to

Enforce), filed on January 20, 2017.  (Doc. 2806).  Defendants filed a response on February 3,

2017, and Plaintiffs filed a reply on February 8, 2017.  (Docs. 2808 and 2810).  Having reviewed

the Motion to Enforce and the accompanying briefs, the Court grants the Motion to Enforce, in

part, and denies it, in part.

*A.  Background*

In February 2016, Plaintiffs filed Plaintiffs' Motion for Emergency Declaratory and

Injunctive Relief, for a Finding of Contempt and for Orders Imposing Coercive and

Compensatory Remedial Relief (Emergency Motion) regarding the permanent injunction

prohibiting double-celling.  (Doc. 2727).  In May 2016, the parties settled, in principle, the

dispute raised in the Emergency Motion.  (Doc. 2760).  On August 31, 2016, the Court granted

the parties' Joint Motion for Approval of Settlement Agreement (Doc. 2766).  (Doc. 2768).  The

Settlement Agreement provided that "Plaintiffs do not waive any claim for attorneys' fees

incurred in connection with the [Emergency Motion]…."  (Doc. 2766-1) at 5, ¶ E.

Also, on August 31, 2016, Plaintiffs sent to defense counsel a request for payment of

attorneys' fees and expenses incurred in prosecuting the Emergency Motion.  (Doc. 2806) at ¶ 5.

Plaintiffs state that

> [a]fter repeated inquiries about a response to the request for payment, defense counsel
> finally responded nearly six weeks later, on October 11, 2016, the date they had been
> given by [plaintiffs' counsel] on October 3, 2106 [sic] as the deadline for a response from
> them before plaintiffs' counsel would file a motion for attorneys' fees and expenses
> absent any response to the request for payment.

*Id.*  Following negotiations, the parties agreed on November 8, 2016, that Defendants would pay

$29,838.01 in attorneys' fees and expenses.  *Id.*; Email exchanges (Doc. 2810-1) at 5-6; Email

exchanges (Doc. 2810-2).

On November 16, 2016, Plaintiffs' counsel wrote defense counsel regarding when

Plaintiffs could expect payment of the attorneys' fees and expenses.  Email exchanges (Doc.

2810-1) at 5.  That same day, defense counsel responded that she sent the bill to Jim Brewster

and Brian Fitzgerald and that she would get back to Plaintiffs' counsel as soon as she could.  *Id.*

Having heard nothing further from defense counsel Plaintiffs' counsel wrote defense

counsel on November 23, 2016 about the status of the payment.  *Id.*  Later in the day, defense

counsel responded that Brewster was trying to determine if the New Mexico Corrections

Department (NMCD) would the pay the bill or the Risk Management Division (RMD).  *Id.* at 4.

Defense counsel also stated that she would get back to Plaintiffs' counsel.  *Id.*

Again, not having heard back from defense counsel, Plaintiffs' counsel wrote defense

counsel on December 7, 2016, that if a dispute remains between NMCD and RMD, one of them

should pay the bill and then they can later resolve their dispute.  *Id.*  Plaintiffs' counsel also

informed defense counsel that he would file a motion for enforcement of their agreement "if that

is what it takes."  *Id.*  Later that morning, defense counsel stated that the invoice was submitted

to the "DOC pay master" and that, as soon as she found out, she would let Plaintiffs' counsel know when to expect the invoice to be processed. *Id.* at 3-4. A week later, defense counsel asked for W-9 forms for two of Plaintiffs' counsel, which they provided that same day. *Id.* at 2.

On December 19, 2016, Plaintiffs' counsel wrote defense counsel that it had been almost two weeks since defense counsel indicated that the invoice was submitted and that he had not heard back from her about when to expect the invoice to be processed. *Id.* at 3. Plaintiffs' counsel asked when Plaintiffs could expect a check. *Id.* That day, Defense counsel responded she would inquire with Fitzgerald the next day about the status of the check and let Plaintiffs' counsel know what the status was. *Id.*

Once more, not having heard anything from defense counsel, Plaintiffs' counsel wrote on January 3, 2017, to defense counsel that he would "file a motion to enforce and seek fees and costs including the fees incurred in the efforts" to get "paid over the last several months," if payment was not made by January 12, 2017. *Id.* at 2-3. Defense counsel responded in the afternoon that the bill would "be sent to DFA [Department of Finance and Administration] in a day or so" along with a justification for payment so that the bill would finally be processed for payment. *Id.* at 2. Defense counsel stated that she did not know how long DFA would take to review and pay the bill. *Id.* She further stated, again, that she would keep Plaintiffs' counsel advised. *Id.*

On January 16, 2017, Plaintiffs' counsel wrote defense counsel that he did not file the motion to enforce and seek attorneys' fees and expenses on January 12, 2017, based on her representation that the bill was being sent to DFA. *Id.* at 1. He also noted that he had not heard back from defense counsel regarding whether the bill was, in fact, sent to DFA, when the bill was sent to DFA, or what the processing "turnaround time" would be. *Id.* That afternoon,

defense counsel responded that she was forwarding Plaintiffs' counsel's email to Brewster and

Fitzgerald at the Department of Corrections. *Id.*

Plaintiffs' counsel, having received no further communications on the status of the bill,

filed the Motion to Enforce on January 20, 2017.  (Doc. 2806).  In doing so, Plaintiffs did not

formally seek Defendants' concurrence in the Motion to Enforce, but stated that "Plaintiffs

reasonably believe that due to the nature of this motion, defendants do not concur in it." *Id.* at ¶

1.  In their Motion to Enforce, Plaintiffs seek (1) the $29,838.01 for attorneys' fees and expenses

incurred in the successful prosecution of the Emergency Motion, and (2) reasonable attorneys'

fees incurred in filing the Motion to Enforce.  On February 2, 2017, a day before Defendants

filed their response to the Motion to Enforce, DFA approved the payment of the bill and

Plaintiffs' counsel were paid $29,838.01.  (Doc. 2808) at ¶¶ 9-12.

*B.  Discussion*

Defendants argue first that the Court should summarily deny the Motion to Enforce

because Plaintiff violated D.N.M. LR-Cv 7.1(a).  Local Rule 7.1(a) states that a "[m]ovant must

determine whether a motion is opposed, and a motion that omits recitation of a good-faith

request for concurrence may be summarily denied."  The purpose of this Local Rule is to prevent

the filing of motions which the parties could otherwise resolve without the Court's intervention.

Defendants note, and the Court agrees, that Plaintiffs did not formally request

Defendants' concurrence in the Motion to Enforce prior to filing it.  On the other hand, Plaintiffs

informed Defendants twice that they intended to file a motion to enforce should Defendants

decline to pay the attorneys' fees and expenses the parties had agreed to.  Despite Plaintiffs'

prodding, Defendants did not pay the attorneys' fees and expenses until after Plaintiffs filed the

Motion to Enforce.  The Court finds that Plaintiffs' communications with defense counsel

sufficiently fulfilled the purpose of Local Rule 7.1(a) by informing Defendants of Plaintiffs'

intent to file a motion to enforce and providing Defendants an opportunity to prevent its filing.

The Court will, therefore, not summarily deny the Motion to Enforce on the basis of Local Rule

7.1(a).

Defendants also argue that the Motion to Enforce should be denied as now moot.  The

Court agrees that the portion of the Motion to Enforce seeking payment of $29,838.01 for

attorneys' fees and expenses associated with successfully prosecuting the Emergency Motion is

now moot.

Defendants further contend that they should not pay reasonable attorneys' fees incurred

in filing the Motion to Enforce.  First, Defendants argue that they processed the bill in a

reasonable amount of time considering the DFA process.  Second, Defendants state that "[t]he

time between Plaintiffs' counsels' last submission of paperwork [i.e., the W-9 forms] and the

time of processing payment was weeks not months."  (Doc. 2808) at ¶ 15.  And third, Defendants

note that Plaintiffs set unilateral deadlines for payment which Defendants had not agreed to.  In

sum, Defendants argue that the Motion to Enforce was unnecessary.

A review of the communications between counsel shows the following:  (1)  Plaintiffs

first requested payment of the attorneys' fees and expenses in August 2016, (2) about three

months later, in early November 2016, the parties agreed to the amount of attorneys' fees and

expenses owed to Plaintiffs, (3) a month later, Defendants submitted the bill to DFA in early

December 2016, (4) Plaintiffs actually received payment of the attorneys' fees and expenses six

months after they first requested payment of attorneys' fees and expenses and about three months

after the parties settled on the amount of attorneys' fees and expenses Defendants would pay, (5)

defense counsel did not keep Plaintiffs' counsel apprised of the status of the processing of the

payment of the bill, as she repeatedly promised she would, and (6) interestingly, Plaintiffs did

not receive payment of the attorneys' fees and expenses until after they filed the Motion to

Enforce and just before Defendants filed their response to the Motion to Enforce.  The Motion to

Enforce is more than justified, based on the lengthy time frames, Defendants' failure to keep

their promises to inform Plaintiffs of the payment process, and the curious timing of the payment

of the attorneys' fees and expenses until after Plaintiffs filed the Motion to Enforce and just

before Defendants filed their response.  Consequently, the Court will award Plaintiffs reasonable

attorneys' fees incurred in preparing and filing the Motion to Enforce and the reply to the Motion

to Enforce.  The Court encourages the parties to settle the issue of these attorneys' fees promptly,

but, if necessary, Plaintiffs can file a motion for an award of reasonable attorneys' fees no later

than 30 days from the date of the entry of this Memorandum Opinion and Order.

IT IS ORDERED that

1.  Plaintiffs' Motion to Enforce Settlement Agreement and for Order Awarding

Attorneys' Fees and Litigation Expenses (Doc. 2806) is granted in part in that Plaintiffs are

entitled to an award of reasonable attorneys' fees for bringing this Motion to Enforce;

2.  if necessary, Plaintiffs have 30 days from the date of the entry of this Memorandum

Opinion and Order to file a motion for an award of reasonable attorneys' fees incurred in

bringing this Motion to Enforce;

3.  the parties will follow the Local Rules and Federal Rules of Civil Procedure in

briefing the motion for an award of reasonable attorneys' fees; and

4.  Plaintiffs' request for $29,838.01 in attorneys' fees and expenses is denied as moot.

_____
UNITED STATES DISTRICT JUDGE

6