IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DWIGHT DURAN, et al.,**

    **Plaintiffs,**

v.                                        1:77-cv-00721-KG-KK

**SUSANA MARTINEZ, Governor, et al.,**

    **Defendants.**

## PLAINTIFFS' MOTION FOR ORDER TO POSTPONE AUTOMATIC STAY

Plaintiffs move this Court for an Order to postpone the automatic stay provision of the Prison Litigation Reform Act (PLRA) 18 U.S.C. § 3626(e) for sixty days, that is, until March 4, 2018. Defendants oppose this motion.

The background to the motion is as follows: The complaint originally filed in this lawsuit alleged multiple constitutional violations and Defendants entered into a consent decree to rectify the violations of those federal rights. After several years of litigation, discovery, monitoring and motions practice, the parties entered into the 1991 Settlement Agreement. [Doc. 1704]. This Agreement provided once the Defendants demonstrated substantial compliance with certain conditions, the modified decree would be vacated except that a handful of sensible, safety-related restrictions on overcrowding would remain in effect in perpetuity. [Doc. 1704]. The case lay dormant from 1999 until 2015. In 2015, an inmate filed motions for relief under the 1991 Duran Decree to remedy illegal double-celling at Western New Mexico Correctional Facility. Since then there has been monitoring and litigation to remedy Defendants' on-going violations of the restrictions on overcrowding. This includes motions practice, pending motions for declaratory

and injunctive relief [Docs. 2837, 2928, 2929], and hearing on relief on August 10, 2018, in which further briefing was ordered.

Magistrate Judge Khalsa is poised to rule on the two remaining issues arising from the 1991 Settlement Agreement: (1) whether women at the Springer Correctional Facility ("SCC") are class members; and (2) what is included in the sixty square feet of space each inmate in dormitory housing must receive under the Agreement. To decide these outstanding issues, Judge Khalsa has also ordered defendants to produce discovery regarding SCC. Additionally, on November 30, 2018, Judge Khalsa ordered the parties to respond to her Order to Show Cause by January 17, 2019. [Doc. 3002]   She has also urged the parties to mediate the outstanding issues in the case. Despite her urging, Defendants have persistently refused to mediate.

On December 5, 2018, Defendants filed a Motion to Terminate Prospective Relief pursuant to the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(b)(2).[Doc. 3004]. Defendants' Motion to Terminate triggered the PLRA's automatic stay provision, 18 U.S.C. § 3626(e), which provides: "Any motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay during the period . . . beginning on the 30th day after such motion is filed."

Since Defendants filed their Motion to Terminate on December 5, 2018, the automatic stay goes into effect on January 4, 2019, unless the Court postpones the effective date of the stay pursuant to 18 U.S.C. §3626(e)(3), which provides: "The court may postpone the effective date of an automatic stay . . . for not more than 60 days for good cause. No postponement shall be permissible because of general congestion of the court's calendar." The PLRA does not elaborate on what constitutes "good cause" to postpone the automatic stay. *See* 18 U.S.C. § 3626(e)(3). While Congress could have set forth those considerations, it chose to give the court broad

discretion so long as "good cause" is something more than "general congestion of the court's calendar." *Id*.

Since postponement of the automatic stay is not appealable, determination of the good cause standard has produced few decisions. Nonetheless, it is instructive to survey other district courts' treatment of this stay provision. The District of Wyoming considered postponement of the PLRA's automatic stay in *Skinner v. Uphoff,* 410 F. Supp. 2d 1104 (D. Wyo.), *aff'd*, 175 Fed.Appx. 255 (10th Cir. 2006). It recognized "that the Defendants [Wyoming State Penitentiary] have come a long way in remediating the conditions [which led to the finding of a constitutional violation]" but added it was "aware of violations alleged to be in existence at this time." *Id*. at 1112. Plaintiffs had "made allegations concerning ongoing inmate on inmate violence, delays in the Defendants' remedial actions, and concerns raised by the Joint Expert." The Court then granted a 60-day postponement of the automatic stay "[b]ased upon these allegations and the need to ensure that the Defendants continue to address conditions at the [Wyoming State Penitentiary]." *Id*.

Subsequently, the Northern District of California adopted the *Skinner* analysis in *Lancaster v. Tilton*, C 79-01630WHA, 2007 WL 4145963 (N.D. Cal. Nov. 19, 2007). In that case, the court postponed an automatic stay because the plaintiffs "submitted evidence *arguably* supporting the allegation that current and ongoing conditions violated the Eighth Amendment, especially with respect to the sanitation situation and failure to provide adequate linens and towels. Further factual inquiry was required." *Id.* (emphasis added). Both courts employed the proper standard of "good cause" which requires plaintiffs to allege current and ongoing constitutional violations.

The Court may find relief outside of the current provisions the decree operates under. *See Gilmore*, 220 F.3d at 1008 ("If the existing relief qualifies for termination under § 3626(b)(2), but there is a current and ongoing violation, the district court will have to modify the relief to meet the Act's standards."); *Tyler v. Murphy*, 135 F.3d 594, 598 (8th Cir. 1998) ( "plaintiffs, who now face the termination of prospective relief, are entitled to seek new or extended prospective relief under the standards set forth in § 3626(a)"); *Graves*, at 1358 ("Having found constitutional violations, the Court may not allow constitutional violations to continue merely because remedies intrude into functions of prison administration, and Defendants' history of noncompliance with prior orders justifies greater court involvement than usually permitted.").

Therefore, and as further evidence, Plaintiffs allege the following violations of federal rights:

1. **Violence and overcrowding**: Defendants violate the Eighth Amendment when they "disregard[] and excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1970).  The overcrowded conditions in the prisons create an unreasonable risk of serious harm from violence, in violation of class members' Eighth Amendment Rights. The New Mexico Legislature has recognized that New Mexico's prisons are overcrowded and that this leads to high rates of violence in the prisons.  *See* New Mexico Legislative Finance Committee ("LFC") Report Cards for Third and Fourth Quarters, Fiscal Year 2018, attached hereto as Exhibit 1.

    a. **Violence**: Violence in New Mexico prisons reached a ten year high this year.  *See id*. The LFC only considers assaults resulting in serious injury and thus does not capture the prevalence of violence and the threat of violence.  Class members report frequent fights and violence, including in front of staff, at the Otero County Prison

4

Facility ("OCPF"), Northwestern New Mexico Correctional Facility ("NWNMCF"), Western New Mexico Correctional Facility ("WNMCF") and Springer Correctional Center ("SCC"). [Doc. 2870-2, 2870-3, 2870-4, 2870-5, 2960-5 at 6, 10].[1] In the presence of defense counsel, staff at WNMCF and SCC have acknowledged that fights and physical violence between inmates are common. Additionally, the classification system in the New Mexico prison system is unreliable which leads to inmates being misclassified and placed in dangerous situations. This has certainly happened at SCC. *See* [Doc. 2837 at 14-15].

      b.    **Sexual Assault**. In March 2017, a Western New Mexico Correctional Facility ("WNMCF") correctional officer was charged with multiple counts of criminal sexual penetration for assaults on a class member. He later entered a plea. The 2018 PREA audit shows 74 allegations in the previous 12 months, 39 substantiated, of which 27 were staff on inmate, and 12 were inmate on inmate. WNMCF PREA Audit 2018, attached hereto as Exhibit 2. All of these incidents occurred since this case became active in early 2016, and since the women were moved to the overcrowded state facility in October 2016.

    c.    **Hygiene and environmental conditions**: Class members in multiple facilities report problems with hygiene that put their health and safety at risk. Below are a few examples:

        1.    WNMCF: The HU3 pod at WNMCF contains double cells without toilets, sinks or water. Inmates there reported multiple-day lockdowns and frequent overnight lockdowns requiring inmates to defecate and urinate in their

---

[1] Plaintiffs' counsel have declarations from inmates at OCPF and SCC but not regarding the violence at WNMCF and NWNMCF. Counsel have spoken with inmates at these facilities who have described that there are frequent fights at these facilities due to the overcrowded conditions.

cells because they cannot access the bathroom, creating raw waste situations and risk of contact with communicable diseases. Class members in the HU8 have insufficient toilets and sinks for the population, with twelve women sharing one toilet and one shower in the trailer-dorms, with a few additional toilets and showers in a rundown portable. In HU11, inmates have reported that there is frequently no heat in the unit, and that they have gone without heat on nights in which the temperature dropped to the teens. Inmates in HU11 also report an unreliable hot water situation where they have to turn on the showers hours before they bathe in order to for the water to become warm.

2. Rodent infestations have been reported by numerous inmates at WNMCF and NWNMCF, both in Grants, NM, where hantavirus is prevalent. Class members at WNMCF report rodents running through the kitchen and cafeteria and being served food with rodent droppings in it.

3. SCC lacks sufficient water for the number of inmates housed there and, as a result, has water restrictions limiting class members' access to showers.. This is in addition to the fact that there are insufficient toilets and sinks at SCC, and a lack of hot water. *See* [Doc. 2960-5 at 1, 7, and 9].

4. Inmates report frequent plumbing issues at NWNMCF that cause the toilets to back up and spill waste and have required the kitchen to close at time.

5. In July of 2016, inmates at CNMCF stated that they were housed in dayrooms where the seven inmates housed in the dayroom shared one toilet that only flushed every thirty minutes on a timer. *See* [Doc. 2870-19].

Additionally, inmates at that facility who were housed in the infirmary due to a lack of space shared a toilet that did not work and leaked. *See* [Doc. 2870-23]. There was also no air conditioning in those cells in July. *See id.*

d. **Healthcare**. The October 23, 2018 Legislative Finance Committee Program Evaluation of NMDC's medical services, reports that both the state and contractor medical positions are chronically understaffed. Exhibit. 3, attached, at 20. (The contract medical provider Centurion "has struggled to recruit and retain staff, incurring fines of $1.1 million in each of the last two fiscal years."). Combined with the overcrowding discussed above, this report presents grave issues regarding constitutionally acceptable provision of healthcare. Inmates experiencing mental illness, suffer from an unconstitutional lack of access to appropriate housing and care. For example, at WNMCF women who are suffering from acute psychiatric symptoms are now housed in atypical segregation conditions. *See Sandin v. Connor*, 515 U.S. 473, 484 (1995) (recognizing due process violation where conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") WNMCF has begun using intake cells – windowless cells with no access to natural light – as their "acute care unit." Women housed there describe the isolation as profound. They describe how very cold these cells are, and how difficult it is not to have access to any natural light. One woman was housed there for 42 consecutive days. *See* Declaration of Kathy Zizwarek, attached hereto as Exhibit 4. At CNMCF, two inmates committed suicide within hours of each other on December 2, 2018. *See* Chris Ramirez, "Two inmates commute suicide with hours of each other at NM prison," (12/7/18) available at https://www.kob.com/investigative-news/two-inmates-commit-suicide-within-hours-of-

each-other-at-nm-prison/5172048/. This shows an un constitutional lack of mental health care and supervision of the inmates.

2. **Due Process.**

    a. In House Parole: The October 23, 2018 LFC fourth quarter report card shows that 9% of inmates in New Mexico prisons remain incarcerated past their release dates, Ex. 1, which constitutes a due process violation and contributes to overcrowding. There are simply not enough caseworkers or resources to adequately serve the population which leads to inmates not being released when they should be. Where a state's statutes regarding parole uses mandatory language, this gives rise to a constitutional liberty interest in parole.

3. **Equal Protection**. At the August 10, 2018 hearing, defense counsel made stunning admissions on the record in her remarks to the Court that evidenced longstanding and pervasive violations of female class members' rights as a result of a wholly inadequate system of classifying inmates. *See* 8/1/18 Tr. At 55 [Doc. 2975-4]. Defense counsel acknowledged women were not being classified because at the time they were all housed in one facility, and NMCD was not providing sufficient oversight. *See id.* Currently, women are being classified and housed in conditions radically different and worse than the men, including overcrowding, housing them in spaces not designed for housing, and dangerous understaffing. For example, when men were housed at SCC there were approximately 280 men there. Currently, the facility houses upwards of 437 women. On a recent tour, SCC staff reported that the staffing remains the same for the women, despite the population increase, and that the staffing vacancy rate was recently as high as 46%. WNMCF also experiences severe overcrowding and, as a result, women have been

sleeping in dayrooms there for approximately a year. Additionally, women at WNMCF are housed in areas that are not designed for housing and lack adequate heat, hot water, and bathrooms. These conditions lead to increased and disproportionate discipline of women, in turn leading to loss of good time or longer stays, which leads to overcrowding. Further, Defendants' own classification policy explicitly treats male and female inmates differently. *See, e.g.,* NMCD Policy CD-08011(W)(c). The policy allows Level III women to be housed at minimum security facilities, thus exposing all women to the increased risks associate with a higher level of classification such as threats of violence, and situations leading to increased discipline and loss of good time. The differential treatment of men and women in the classification system is a *de facto* equal protection violation. Additionally, SCC appears to have the highest number of release eligible inmates ("REI") of any state run prison, reporting 35 release eligible inmates on 2/15/18, 40 on 3/15/18, and 20 on 9/20/18. *See* Ex. 4.

4. **Understaffing.** It is undisputed that NMCD has experienced a staffing crisis. *See, e.g.,* Larry Barker, "The Costly Crisis Behind Bars," (March 20, 2017) available at https://www.krqe.com/news/investigations/larry-barker/13-investigates-the-costly-crisis-behind-bars_20180104025716182/900305496 (quoting Secretary Jablonski saying the vacancy rates are unacceptable). The understaffing of the prisons implicates class members' Eighth Amendment Rights, as well as Due Process and Equal Protection. As explained in paragraph 7, the women at SCC's equal protection rights are implicated by the understaffing of the facility. Understaffing implicates class members' due process rights when inmates are locked down, experiencing a deprivation of their liberty, for no reason but the lack of staff. Understaffing also implicates class members' right to be free

from unreasonable risks to their health and safety where there is insufficient staff to protect class members from inmate on inmate violence, locking pods down for hours and days to investigate suspected fights and when there is insufficient staff to ensure that class members have access to the medical care that they need.  Especially in combination with the overcrowded conditions, understaffing in the New Mexico prisons violates class members' constitutional rights.

These numerous current and ongoing constitutional violations provide the Court with ample good cause to postpone the stay of the relief in this case for an additional sixty days.

Furthermore, the Court should postpone the stay to allow Judge Khalsa to decide the outstanding issues before her. One of these issues is whether inmates at SCC are part of the class. Plaintiffs allege current and ongoing constitutional violations at that facility, and it would help the Court render a decision on Defendants' Motion for Immediate Termination of Prospective Relief Pursuant to 18 U.S.C. § 3626(B)(2) to know if these women are part of the class.  Judge Khalsa has ordered the parties to respond by January 17, 2019 to her Order to Show Cause which may provide her with enough information to issue a ruling on this issue.  Postponing the stay would give the Court time to decide this issue, and this constitutes further good cause for postponement.   Finally, Defendants have indicated that on January 7, 2018 they are willing to discuss the possibility of mediation.  Postponing the stay would allow class counsel to more meaningfully prepare for and engage in this conversation.

WHEREFORE, Plaintiffs respectfully request this Court postpone for good cause the automatic stay for 60 days, that is, until March 4, 2018, as permitted by 18 U.S.C. § 3626(e)(3).

    Respectfully submitted,

    */s/ Nicholas T. Davis*

DAVIS LAW NEW MEXICO
Philip B. Davis
Nicholas T. Davis
1000 Lomas Blvd. NW
Albuquerque, NM 87102
(505) 242-1904
phil@davislawnm.com
nick@davislawnm.com

Katherine Loewe
THE LAW OFFICE OF RYAN J. VILLA
2501 Rio Grande Blvd NW Ste A
Albuquerque, NM 87104
(505) 639-5709 or (505) 256-7690
kate@rjvlawfirm.com

LAW OFFICE OF ALEXANDRA
FREEDMAN SMITH
Alexandra Freedman Smith
925 Luna Cir, NW
Albuquerque, NM 87102
(505) 314-8884
asmith@smith-law.nm.com

ROTHSTEIN DONATELLI LLP
Mark H. Donatelli
Reed C. Bienvenu
Post Office Box 8180
1215 Paseo de Peralta
Santa Fe, New Mexico 87501
(505) 988-8004
mhd@rothsteinlaw.com
rbienvenu@rothsteinlaw.com

LAW OFFICES OF PETER CUBRA
Peter Cubra
4004 Carlisle NE Suite O
Albuquerque, NM 87110
Phone 361-2140 pcubra@qwestoffice.net

ACLU NATIONAL PRISON PROJECT
David C. Fathi*
915 15th St. N.W., 7th Floor
Washington, DC 20005
202-548-6603
dfathi@aclu.org

*Not admitted in DC; practice limited to federal courts.*

*Attorneys for the Plaintiff Class*

### Certificate of Service

I HEREBY CERTIFY that on December 20, 2018, I caused the foregoing to be filed using CM/ECF which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Alexandra Freedman Smith*
Alexandra Freedman Smith