IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DWIGHT DURAN *et al.*,

    Plaintiffs,

v.                                                     Civ. No. 77-721 KK/SCY

MICHELLE LUJAN GRISHAM *et al.,*

    Defendants.

## **ORDER DENYING MOTIONS TO STAY AND TERMINATE**

THIS MATTER is before the Court on the Motions to Stay and Terminate filed between October 11, 2019 and December 30, 2019 by:

    Abraham Piedra (Doc. 3093)
    Leo Duran (Doc. 3094)
    David Peterson (Doc. 3095)
    Carnell Hunnicutt (Doc. 3097)
    Chris Williams (Doc. 3099)
    Jerry Kame (Docs. 3102, 3139)
    Erminio Acosta (Doc. 3103)
    James Ruiz (Doc. 3105)
    Ken Cordova (Doc. 3133)
    Michael Clark (Doc. 3134)
    Aaron Feeney (Doc. 3135)
    Shane Harrison (Doc. 3136)
    Christopher Perez (Doc. 3137)
    Marvin Riley (Doc. 3138)
    Frank Chavez (Doc. 3140)
    Fredrick Williams (Doc. 3158)
    Davis Wilson (Doc. 3165)
    Gilbert Rhodes (Doc. 3166)
    Emanuelu Tunoa (Doc. 3167), and
    Guy Young (Doc. 3168).[1]

The Court, having reviewed the motions and being otherwise fully advised, FINDS that the motions are not well taken and should be DENIED. However, to the extent that the motions

---

[1] All of the listed motions are substantively identical, except for Mr. Perez's Motion to Stay and Terminate, which includes two (2) pages of argument not found in the other listed motions. (*See* Doc. 3137 at 6, 15.)

can be construed as objections to the parties' Revised Settlement Agreement ("RSA"), the Court will consider them in determining whether to finally approve the RSA.

On September 5, 2019, the Court entered an Order Granting Preliminary Approval of Class Action Settlement Agreement, and Approving and Directing the Issuance of Notice to Plaintiff Class Members. (Doc. 3072.) In it, the Court ordered Defendants to post the RSA and an approved Notice to Class Members in specified locations in every New Mexico Corrections Department ("NMCD") facility from September 24, 2019 to December 23, 2019. (*Id.* at 8-9.) The Court further ordered any class member wishing to object to the proposed settlement to submit his or her objections by December 23, 2019. (*Id.* at 9.) In a subsequent order, the Court set a final hearing regarding whether the proposed settlement should be approved for February 3, 2020. (Doc. 3092.) Numerous class members have since filed objections to the RSA. In addition, movants filed the Motions to Stay and Terminate presently before the Court.

In their motions, movants ask the Court to: (a) stay all proceedings in this case; (b) terminate all current counsel for the Plaintiff class; and, (c) terminate the RSA. (*See, e.g.*, Doc. 3093 at 1.) In support of these requests, movants contend that class counsel have conspired with Defendants to illegally terminate the overcrowding restrictions in the consent decree entered in this case on September 20, 1991, without class members' consent.[2] (*See, e.g., id.* at 1-2.) Movants further argue that the RSA is illegal because it conflicts with the New Mexico Corrections Population Control Act ("CPCA"), N.M. Stat. Ann. §§ 33-2A-1 *et seq.* (*See, e.g.,* Doc. 3093 at 2.) Finally, movants contend that the Notice to Plaintiff Class Members (Doc. 3072-2) omits

---

[2] The 1991 consent decree provides that its overcrowding restrictions are to remain in place in perpetuity. (Doc. 2851-3 at 1-20; Doc. 3072 at 2.) However, the RSA modifies these restrictions and provides for their termination approximately eighteen (18) months after final approval of the agreement, provided Defendants have achieved sustained compliance with the agreement's terms. (Doc. 3067-1 at 2-17; Doc. 3072-2 at 4-7.)

salient facts and misstates the law, and that class counsel have not adequately explained the RSA to them.[3] (*See, e.g.*, Doc. 3093 at 1-3.)

There are several problems with movants' arguments. For example, movants contend that the RSA's proposed termination of the 1991 consent decree's overcrowding restrictions is illegal because the Prison Litigation Reform Act's ("PLRA") termination provisions do not apply to the decree.[4] (*See, e.g.*, Doc. 3093 at 2.) As movants observe, the PLRA does not apply to private settlement agreements. (*See, e.g., id.*); 18 U.S.C. § 3626(c)(2). However, the 1991 consent decree is manifestly *not* a "private settlement agreement," *i.e.*, "an agreement entered into among the parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled." 18 U.S.C. § 3626(g)(6). Rather, it is a "consent decree," *i.e.*, "relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties," and as such is subject to the PLRA. 18 U.S.C. § 3626(c)(1), (g)(1). Thus, movants are mistaken in asserting that the PLRA's termination provisions do not apply to the overcrowding restrictions in the 1991 consent decree. This mistake, in turn, undercuts their argument that class counsel conspired with Defendants to illegally terminate the overcrowding restrictions.

---

[3] In addition, Mr. Perez objects to the RSA because, he contends, it does not adequately address classification, the use of dayrooms as dormitories, the living conditions of mentally ill inmates, the housing of out-of-state inmates in NMCD facilities, and the parole of and programming available to "lifers" and "85% inmates." (Doc. 3137 at 6, 15.) These contentions are expressly stated as objections to the RSA rather than arguments in support of Mr. Perez's motion. (*Id.*) As such, the Court will consider them in deciding whether to finally approve the RSA but will not further address them here.

[4] *Inter alia*, the PLRA's termination provisions direct that,

> [i]n any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener—(i) 2 years after the date the court granted or approved the prospective relief; (ii) 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or (iii) in the case of an order issued on or before the date of enactment of the [PLRA], 2 years after such date of enactment.

18 U.S.C.A. § 3626(b)(1).

Movants are also mistaken in arguing that the RSA violates the CPCA. According to movants, the RSA violates the CPCA because the RSA caps prison population at 120 per cent of capacity, (Doc. 3067-1 at 6), while the CPCA caps it at 100 per cent. (*See, e.g.*, Doc. 3093 at 2.) In fact, however, the CPCA does not cap prison population at all. Rather, it requires the state corrections population control commission to "consider" the release of nonviolent offenders within 180 days of their projected release date when the inmate population of a correctional facility exceeds 100 per cent of its rated capacity for more than 60 consecutive days. N.M. Stat. Ann. § 33-2A-6. As such, far from conflicting with the RSA, the CPCA actually provides a mechanism Defendants may use to reduce excessive prisoner population and thereby remain in compliance with the RSA's cap. Certainly, the RSA in no way purports to override or abrogate the CPCA's requirements.

Also unavailing are movants' various arguments regarding the adequacy of the information class counsel has provided to the Plaintiff class about the RSA. On September 5, 2019, after two hearings and due consideration of the record and the relevant law, the Court held that the Notice to Plaintiff Class Members, and the procedures by which class members were to be notified of the RSA, were

> reasonably calculated to inform all class members of the pendency of the action and the terms of the proposed settlement, and to afford them an opportunity to object to the proposed settlement. *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005). The modified proposed Notice and notice procedure constitute the best notice practicable under the circumstances.

(Doc. 3072 at 6.) The Court therefore approved the "form and content" of the notice "as satisfying the requirements of Federal Rule of Civil Procedure 23 and due process." (*Id.* at 8.)

Movants have failed to present any evidence or argument that would call into question the Court's prior approval of the notice and notice procedures. Their requests for additional

procedures (such as meetings between class counsel and "all of the class members"), and/or more detailed information (such as the precise dimensions of cells at the Northwest New Mexico Correctional Facility as measured by class counsel), are simply not practicable given the size and fluidity of the class and the multiple correctional facilities at issue.

In short, movants' contention that class counsel betrayed them by entering into the RSA is based entirely on misconceptions and unreasonable expectations. In so holding, the Court has specifically considered the factors listed in Federal Rule of Civil Procedure 23(g), and finds that class counsel's ability, resources, and legal and factual knowledge and experience render them uniquely well qualified to represent the Plaintiff class in this matter. Counsel have fairly, adequately, zealously, and effectively represented the Plaintiff class for decades and continue to do so to this day.[5] Movants' request for the Court to terminate class counsel will therefore be denied. *See Skinner v. Uphoff*, 175 F. App'x 255, 260 (10th Cir. 2006)[6] (affirming denial of prisoner's motion to appoint new class counsel where current class counsel's "representation was more than adequate"); *Arney v. Finney*, 766 F. Supp. 934, 940 (D. Kan. 1991) (declining to terminate appointed counsel or appoint different counsel for prisoner plaintiff class where class was "effectively and vigorously represented by counsel who have a good knowledge of the law and long experience with the particular facts of th[e] case").

That being so, motions, including any seeking a stay of these proceedings and termination of the RSA, must be filed (if at all) through current class counsel.

---

[5] Movants observe that only one attorney for the class, Alexandra Freedman Smith, signed the RSA. (Doc. 3067-1 at 14.) However, several other attorneys also participated in the settlement negotiations resulting in the RSA and the proceedings to secure the Court's preliminary approval of it, including Peter Cubra, Philip Davis, and Mark Donatelli, all of whom have represented the Plaintiff class since long before the 1991 consent decree was entered. (*See, e.g.*, Doc. 2984 at 3.)

[6] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

> [T]he court must rely upon counsel for plaintiffs to represent the class and to bring relevant matters to the court's attention on behalf of the class. The confusion and repetition which would be created by individual members of the class raising their own complaints was one of the reasons for certifying this matter as a class action. Although the court has permitted various documents authored by individual class members to be filed in this case, this does not mean that individual class members . . . are at liberty to act as lawyers for the class or to pursue individual claims unrelated to the class.

*Arney*, 766 F. Supp. at 940. The Court advises class members generally and movants specifically that, until further Order of this Court, it will only entertain motions brought on behalf of one or more class members in this action if they are filed by class counsel. Motions filed by individual class members will be summarily denied.

Notwithstanding the foregoing, the Court recognizes that: (a) individual class members were entitled to file objections to the RSA between September 24, 2019 and December 23, 2019; (b) movants' Motions to Stay and Terminate were filed during that time period; and, (c) portions of the motions can be construed as objections to the RSA. As such, the Court will consider movants' Motions to Stay and Terminate in deciding whether to finally approve the RSA, to the extent that the motions can be construed as objections to the agreement.

IT IS THEREFORE ORDERED that the Motions to Stay and Terminate of Messrs. Piedra, Duran, Peterson, Hunnicutt, Chris Williams, Kame, Acosta, Ruiz, Cordova, Clark, Feeney, Harrison, Perez, Riley, Chavez, Fredrick Williams, Wilson, Rhodes, Tunoa, and Young (Docs. 3093-95, 3097, 3099, 3102-03, 3105, 3133-40, 3158, 3165-68) are DENIED.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent