**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DWIGHT DURAN *et al.*,

      Plaintiffs,

                                  Civ. No. 77-721 KK/SCY

v.

MICHELLE LUJAN GRISHAM *et al.*,

      Defendants.

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE

THIS MATTER is before the Court on Plaintiffs' Emergency Motion for Temporary Restraining Order and Order to Show Cause (Doc. 3224), filed April 10, 2020.[1]  Defendants filed a response in opposition to the motion on April 16, 2020, and the Court held a hearing on the motion on April 17, 2020.  (Docs. 3227, 3228.)  The Court, having reviewed the parties' submissions, the record, and the relevant law, having heard the parties' presentations at the April 17, 2020 hearing, and being otherwise fully advised, FINDS that the motion is not well-taken and should be DENIED.

### I.  Introduction

On February 10, 2020, the parties executed a Second Revised Settlement Agreement (Doc. 3200-1) ("SRSA"), which the Court approved and adopted on February 14, 2020.  (Doc. 3205.)  Paragraph 17 of the SRSA ("SRSA ¶ 17") provides that, "[a]s remedial relief, [the New Mexico Corrections Department] agrees to award one month's worth of good time consistent with NMSA 1978, § 33-2-34(A)" to inmates housed for at least 60 days during specified time frames in

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned United States Magistrate Judge to conduct any and all proceedings (including a jury or nonjury trial) and to enter a final judgment in this matter.  (Docs. 3089, 3090.)

dormitories at Northwest New Mexico Correctional Facility, Springer Correctional Center, Western New Mexico Correctional Facility, and Otero County Prison Facility.  (Doc. 3200-1 at 11.)  Excluded from receiving this relief are otherwise eligible inmates who have:  (a) "a sustained finding of assault against a staff member," or (b) "less than 45 days of time left to serve on their sentence as measured from the entry of this Court's final approval order."  (*Id.*)  SRSA ¶ 17 further provides that "[t]hese good time awards shall be made within 30 days of this Court's final approval order," *i.e.*, by March 15, 2020, or, in the case of "inmates who become eligible . . . after the date of the final approval order, . . . within 30 days of the date the inmate becomes eligible."  (*Id.*)

Plaintiffs contend that Defendants have violated and are continuing to violate SRSA ¶ 17 by:  (1) failing to award five inmates the good time to which they are entitled; (2) incarcerating nineteen inmates past their projected release dates as modified by the good time awards they did receive or should have received[2]; (3) awarding sixteen inmates remedial relief after the deadline for doing so expired; and, (4) refusing to award remedial relief to in-house parolees.  (Doc. 3224 at 2, 13.)  Plaintiffs therefore petition the Court to issue a temporary restraining order ("TRO") requiring Defendants to:  (1) immediately release the nineteen inmates whose modified projected release dates have passed; (2) apply the amount of any good time from which these inmates should have benefitted, but did not, to reduce their parole terms; and, (3) award good time under SRSA ¶ 17 to otherwise eligible in-house parolees.  (*Id.* at 3.)  Plaintiffs also ask the Court to order Defendants to show cause why they have failed to comply with SRSA ¶ 17.  (*Id.*)

According to Defendants, however:  (1) Plaintiffs' allegations that Defendants are improperly incarcerating nineteen inmates are unsubstantiated; (2) Defendants' technical

---

[2] Plaintiffs allege that when they filed their motion, twelve of these inmates' modified projected release dates had already passed, while the modified projected release dates of the other seven were imminent.  (*See* Doc. 3224 at 5-11.)  Since that time, the alleged modified projected release dates of the seven other inmates have also passed.  (*Id.*)

violations of the deadline for awarding good time under SRSA ¶ 17 were harmless; and, (3) in-house parolees are categorically ineligible for relief under SRSA ¶ 17. (Doc. 3227 at 2, 5-6.) Defendants therefore ask the Court to deny Plaintiffs' motion in its entirety. (*Id.* at 8.)

## II.  Legal Standards

Except as to notice and duration, the legal standards governing TROs and preliminary injunctions are the same. *See People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order."); *Firebird Structures, LCC v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 1505*, 252 F. Supp. 3d 1132, 1156 (D.N.M. 2017) ("The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration.").  "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019).  As such, "the movant must make a clear showing that he is entitled to the injunction." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1252 (10th Cir. 2018) (quotation marks omitted); *see Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (movant's right to relief must be "clear and unequivocal"); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (same); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (same).

To be entitled to a preliminary injunction, the moving party

> must establish the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.

*Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281*; Schrier*, 427 F.3d at 1258*; Heideman*, 348 F.3d at 1188.  "[A]ny modified test which relaxes one of the prongs for preliminary relief and

thus deviates from the standard test is impermissible." *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1282.

The purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Schrier*, 427 F.3d at 1258.  As such, the Tenth Circuit has identified three types of preliminary injunctions that are "specifically disfavored": "(1) preliminary injunctions that alter the status quo[3]; (2) mandatory preliminary injunctions[4]; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."[5]  *Id.* at 1259; *Free the Nipple-Fort Collins*, 916 F.3d at 797. Disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259*; see also Free the Nipple-Fort Collins*, 916 F.3d at 797 ("To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.") (quotation marks omitted).

### III.  Analysis

Plaintiffs argue that they are entitled to a TRO because Defendants have violated and are continuing to violate SRSA ¶ 17 and they have shown all of the necessary elements for issuance of a TRO with respect to these violations.  (Doc. 3224.)  The Court will address whether Plaintiffs

---

[3] The "status quo" in this context is the "last peaceable uncontested status existing between the parties before the dispute developed." *Schrier*, 427 F.3d at 1260.

[4] A "mandatory" injunction is one that "affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Schrier*, 427 F.3d at 1261 (brackets and ellipses omitted).

[5] "'[A]ll the relief to which a plaintiff may be entitled' must be supplemented by a further requirement that the effect of the order, once complied with, cannot be undone." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247 (10th Cir. 2001).

have established all of the required elements for issuance of a TRO with respect to each alleged

violation in turn.[6]

### A.   Defendants' alleged failure to award five inmates the good time to which they are entitled

Plaintiffs first allege that Defendants are violating SRSA ¶ 17 by failing to award five

inmates the good time to which these inmates are entitled.  Specifically, at the April 17, 2020

hearing, Plaintiffs maintained that the following inmates have not received the good time to which

they are entitled under SRSA ¶ 17:  Ashley Montano, Toussaint Clarke, Kiera Ensey, Crystal

Sandoval, and Christopher Romero.[7]

The Court finds that Plaintiffs have presented insufficient evidence to show that

Defendants have failed to award the first three inmates—Ms. Montano, Mr. Clarke, and Ms.

Ensey—the good time to which they are entitled under SRSA ¶ 17.  At the April 17, 2020 hearing,

Plaintiffs relied on Good Time Figuring Sheets ("GTFS") the parties had e-mailed to the Court

earlier that morning to prove Defendants' failure to award these three inmates all of the good time

to which they are entitled.  However, these GTFS are not self-explanatory and, without

testimonial or additional documentary support, show only how much good time these inmates *did*

receive pursuant to SRSA ¶ 17, and not how much good time they were *entitled to* receive.[8]  As

---

[6] As further discussed below, the Court need not determine whether the TRO Plaintiffs seek is disfavored because Plaintiffs have failed to establish that they are entitled to a TRO even under the less demanding standards applicable to all preliminary injunctive relief.  *Free the Nipple-Fort Collins*, 916 F.3d at 797; *Schrier*, 427 F.3d at 1259.

[7] Initially, Plaintiffs also asserted that Edward Goodrum and Maygan Davis have not received all of the good time to which they are entitled under SRSA ¶ 17.  However, Plaintiffs later conceded that Mr. Goodrum and Ms. Davis have in fact received the good time awards to which they are entitled.

[8] As previously noted, SRSA ¶ 17 requires Defendants to award eligible inmates "one month's worth of good time consistent with NMSA 1978, § 33-2-34(A)."  (Doc. 3200-1 at 11.)  Section 33-2-34(A) prescribes the maximum number of days of "meritorious deductions" that various categories of inmates can receive, ranging from four to thirty days per month of time served.  N.M. Stat. Ann. § 33-2-34(A).  In other words, inmates are entitled to different amounts of good time under SRSA ¶ 17 depending on how they are categorized under Section 33-2-34(A).  Thus, to establish a particular inmate's entitlement to a particular amount of good time under SRSA ¶ 17, at a minimum

such, the GTFS fail to substantiate Plaintiffs' allegations that these three inmates have not received all of the good time to which they are entitled.  Nor have Plaintiffs offered any other evidence to support their allegations on this point.

In addition, the Court notes that, based on the representations of Hope Salazar[9] at the April 17, 2020 hearing, it appears that:  (a) the notation on Ms. Montano's GTFS reflecting how much good time she received under SRSA ¶ 17 is an error that has been corrected in Defendants' database, and Ms. Montano did in fact receive all of the good time to which Plaintiffs claim she was entitled; and, (2) as parole absconders, Mr. Clarke and Ms. Ensey received all of the good time to which they were entitled.  Plaintiffs presented no evidence to challenge Ms. Salazar's representations on these points.

As previously stated, the moving party bears the burden of making a "clear showing" that it is entitled to a TRO.  *McDonnell*, 878 F.3d at 1252.  Here, Plaintiffs have failed to establish any of the required elements for issuance of a TRO as to Ms. Montano, Mr. Clarke, or Ms. Ensey. Absent a clear showing that these inmates have not received the good time awards to which they are entitled, Plaintiffs have not sufficiently demonstrated a substantial likelihood of success on the merits of this claim, irreparable harm unless the requested TRO issues, that the threatened harm outweighs any injury to Defendants, or that the TRO will not adversely affect the public interest. *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281; *Schrier*, 427 F.3d at 1258*; Heideman*, 348 F.3d at 1188.

---

Plaintiffs would have had to show how that inmate should have been categorized under Section 33-2-34(A).  Without testimonial or other documentary support, however, the GTFS before the Court fail to do that.

[9] Ms. Salazar is the New Mexico Corrections Department's Inspector General.  (Doc. 3224-4 at 1.)

Plaintiffs allege that the fourth inmate who has not received appropriate remedial relief is Ms. Sandoval. Ms. Sandoval's GTFS shows that she received the maximum good time award available under SRSA ¶ 17. However, Defendants admit that they applied this award to only one of her concurrent sentences and that she remains incarcerated because she is still serving the other two. (Doc. 3227 at 4.) According to Defendants, they applied Ms. Sandoval's award in this manner based on their interpretation of the provision in SRSA ¶ 17 that permits only one good time award per inmate. (*Id.*)

The Court seriously doubts that Defendants' interpretation of how SRSA ¶ 17 applies to concurrent sentences is correct. Nevertheless, the Court finds that Plaintiffs have failed to make a clear showing of their entitlement to a TRO as to Ms. Sandoval at this juncture. *McDonnell*, 878 F.3d at 1252. Plaintiffs have presented no evidence regarding the length of the two sentences Ms. Sandoval is still serving or the projected release dates associated with them. They have therefore failed to demonstrate that the end of either of these sentences would be imminent if Defendants applied Ms. Sandoval's good time award to them. In these circumstances, even assuming Defendants' interpretation of SRSA ¶ 17 is wrong, Plaintiffs have failed to show irreparable harm to Ms. Sandoval if the Court does not issue a TRO requiring Defendants to apply her good time award to her two remaining sentences. *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281; *Schrier*, 427 F.3d at 1258*; Heideman*, 348 F.3d at 1188.

The fifth and last individual who, according to Plaintiffs, has not received the good time to which he is entitled is Mr. Romero. As an in-house parolee, Mr. Romero presents a distinct issue, but ultimately with the same result. Defendants concede that they refused to award Mr. Romero any good time under SRSA ¶ 17, based on their position that SRSA ¶ 17 categorically excludes in-house parolees from receiving remedial relief. (*See* Doc. 3227 at 3.) However, at the

April 17, 2020 hearing, the parties agreed that Mr. Romero completed his parole and was released from custody on April 15, 2020.

In these circumstances, Plaintiffs cannot show at least one of the necessary elements for issuance of a TRO as to Mr. Romero, *i.e.*, irreparable harm unless the TRO issues. *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281. Specifically, because he is not in custody, Plaintiffs cannot show that Mr. Romero will be irreparably harmed unless the Court immediately orders Defendants to award him good time under SRSA ¶ 17. Likewise, because Mr. Romero has completed his parole, Plaintiffs cannot show that he will be irreparably harmed unless the Court immediately orders Defendants to reduce his parole term by the good time he should have received but did not. For these reasons, the Court finds that Plaintiffs have failed to show that they are entitled to a TRO based on Defendants' alleged failure to award Ms. Montano, Mr. Clarke, Ms. Ensey, Ms. Sandoval, and Mr. Romero the good time to which they are entitled under SRSA ¶ 17.

**B.     Defendants' alleged incarceration of nineteen inmates past their modified projected release dates**

Plaintiffs next allege that Defendants are violating SRSA ¶ 17 by incarcerating nineteen inmates past their projected release dates as modified by the good time awards these inmates did receive or should have received under that paragraph. (Doc. 3224 at 2, 5-11.) However, even accepting Plaintiffs' allegations regarding these inmates' modified projected release dates as accurate—and the GTFS before the Court suggest that in many instances they are not—the incarceration of an inmate past his or her projected release date does not violate SRSA ¶ 17. SRSA ¶ 17 does not require Defendants to release any inmate, nor could it, absent compliance with the stringent requirements the Prison Litigation Reform Act ("PLRA") imposes on the entry of prisoner release orders. *See* 18 U.S.C. § 3626(g)(4) (defining "prisoner release order" as "any

order, including a temporary restraining order or preliminary injunctive relief, . . . that directs the release from or nonadmission of prisoners to a prison"); 18 U.S.C. § 3626(a)(3) (setting forth requirements for prisoner release orders "[i]n any civil action with respect to prison conditions," including that such orders can only be entered by a three-judge panel).[10]

Plaintiffs argue that, to the extent the nineteen inmates in question have been incarcerated past their modified projected release dates, they have not received the benefit of their good time awards under SRSA ¶ 17. (Doc. 3224 at 2-3, 5-9.) In so arguing, Plaintiffs improperly conflate the process by which inmates in Defendants' custody are awarded good time and the related but separate process by which they are released from incarceration. As the GTFS before the Court show, an inmate's projected release date changes frequently as good time credits are added or subtracted for various reasons, such as participation in programming or misconduct while incarcerated. Defendants track these credits and forfeitures as they accrue and update the inmate's projected release date accordingly. However, as Defendants point out, a number of factors in addition to the inmate's projected release date may affect when he or she is actually released, including when Offender Management Services completes its mandatory file audit, when the Parole Board approves the inmate's parole plan, and when a bed in the inmate's approved transitional housing becomes available. (Doc. 3227 at 3-4.) In light of these additional factors, the timing of an inmate's actual release falls well outside the scope of SRSA ¶ 17.

Accordingly, the Court holds that an inmate receives the benefit of the remedial relief provided for in SRSA ¶ 17 when the inmate is awarded the correct amount of good time and his

---

[10] Moreover, even if the Court were inclined to go beyond simply enforcing SRSA ¶ 17 and grant Plaintiffs the prisoner release order they have requested, the Court—by way of a three-judge panel—would first have to make a "new round of findings" of compliance with the PLRA. *See Doe v. Cook Cty., Illinois*, 798 F.3d 558, 564 (7th Cir. 2015) (Easterbrook, J.); *Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004). However, Plaintiffs have made no attempt to present any evidence or argument to justify such findings.

or her projected release date is modified accordingly in Defendants' records.  Nothing in SRSA ¶ 17 can or should be read to guarantee that an inmate will be released on his or her modified projected release date, regardless of whether any of the other requirements for his or her release have been met.  Moreover, Plaintiffs have presented no evidence that Defendants have held any inmate beyond his or her projected release date to deprive him or her of the benefit of good time received under SRSA ¶ 17.

In sum, the Court finds that Plaintiffs have failed to establish the necessary elements for issuance of a TRO based on Defendants' alleged incarceration of nineteen inmates past their modified projected release dates.  In particular, Plaintiffs have demonstrated no likelihood of success on the merits of this claim, and have failed to show that the threatened harm to Plaintiffs if a TRO does not issue outweighs any injury to Defendants if it does, or that the TRO will not adversely affect the public interest.[11]  *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281*; Schrier*, 427 F.3d at 1258*; Heideman*, 348 F.3d at 1188.

## C.    Defendants' failure to award remedial relief under SRSA ¶ 17 in a timely manner

Plaintiffs' next allegation is that Defendants violated SRSA ¶ 17 by failing to award the required remedial relief to certain inmates before the deadline for doing so expired.  As previously noted, SRSA ¶ 17 requires Defendants to award inmates the remedial relief at issue within 30 days of the date they become eligible to receive it, which, in the case of the inmates at issue here, was within 30 days of the Court's final approval of the SRSA, *i.e.*, by March 15, 2020.[12]  (Doc.

---

[11]  On the contrary, it seems to the Court that ordering the release of inmates before their parole plans have been approved or beds at their approved transitional housing have become available, as Plaintiffs appear to be requesting, would be very much contrary to the public interest.

[12] Plaintiffs do not allege that any of the inmates identified in their motion became eligible for remedial relief under SRSA ¶ 17 after the Court's final approval of the SRSA.  (*See generally* Doc. 3224.)

3200-1 at 11.)  Defendants concede that they failed to meet this deadline with respect to several of the inmates identified in Plaintiffs' motion.  (Doc. 3224-4 at 2-3; Doc. 3227 at 5-6.)  However, at the April 17, 2020 hearing, Plaintiffs in their turn conceded that they have no evidence that Defendants' untimeliness harmed any of these inmates.  The Court therefore finds that Plaintiffs have failed to establish at least one of the necessary elements for issuance of a TRO with respect to this claim, *i.e.*, irreparable harm unless the requested TRO issues.  *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281*; Schrier*, 427 F.3d at 1258*; Heideman*, 348 F.3d at 1188.

### D.   Defendants' refusal to award remedial relief under SRSA ¶ 17 to in-house parolees

Finally, Plaintiffs allege that Defendants are violating SRSA ¶ 17 by refusing to award remedial relief under that paragraph to otherwise eligible class members who are serving in-house parole.  As noted above, Defendants concede that they refused to award remedial relief under SRSA ¶ 17 to the sole in-house parolee identified in Plaintiffs' motion, *i.e.*, Mr. Romero.  However, as further noted, there is no dispute that Mr. Romero completed his parole and was released from custody on April 15, 2020.  Thus, as to Mr. Romero and for the reasons already discussed, Plaintiffs have failed to show at least one of the necessary elements for issuance of a TRO, *i.e.*, irreparable harm unless the TRO issues. *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281*; Schrier*, 427 F.3d at 1258*; Heideman*, 348 F.3d at 1188.

However, it appears likely that Plaintiffs will seek the same preliminary injunctive relief they sought for Mr. Romero on behalf of other in-house parolees in the near future.  At the April 17, 2020 hearing, Plaintiffs indicated that, when they filed their motion, Mr. Romero was the only otherwise eligible in-house parolee who would have been within 10 days of release had he received a good time award under SRSA ¶ 17.  However, Plaintiffs further claimed—albeit without any evidentiary support—that there are other in-house parolees who will soon be eligible

for release if they receive the good time awards to which they are entitled under SRSA ¶ 17. Thus, according to Plaintiffs, unless the parties can quickly reach a negotiated agreement, the issue of whether otherwise eligible in-house parolees are entitled to remedial relief under SRSA ¶ 17 will soon be back before the Court on another motion for a TRO or preliminary injunctive relief.

At their request, the Court will allow the parties a short interval to try to resolve this issue on their own.  However, if the parties are unable to reach a resolution within that interval, they will be required to submit simultaneous briefing regarding whether in-house parolees are categorically excluded from receiving remedial relief under SRSA ¶ 17 no later than Friday, May 1, 2020.  The parties are to file response briefs, if any, by Wednesday, May 6, 2020, and to limit response briefs to issues not already addressed in the initial briefs.  The parties are to include in their initial briefs whether the 45-day exclusion in SRSA ¶ 17 applies to anyone after March 31, 2020, and whether SRSA ¶ 17 would conflict with any state statutes if the Court were to find that it does not.  The parties should further address whether there are any other reasons under state law why in-house parolees should be excluded from receiving remedial relief under SRSA ¶ 17.

## IV.  Conclusion

For the reasons described above, the Court finds that Plaintiffs have failed to show the four factors necessary for issuance of a TRO with respect to any of the SRSA violations they allege.  *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281*; Schrier*, 427 F.3d at 1258*; Heideman*, 348 F.3d at 1188.  The Court further finds that Plaintiffs have failed to meet this burden whether the relief they seek is disfavored or not.  *Free the Nipple-Fort Collins*, 916 F.3d at 797; *Schrier*, 427 F.3d at 1259.  The Court will therefore deny Plaintiffs' motion for a TRO.

In addition, the Court will deny Plaintiffs' motion for an order to show cause because, based on the evidence currently in the record, Defendants have tried in good faith to comply with SRSA ¶ 17 based on a reasonable interpretation of its provisions or have taken all reasonable steps and substantially complied with that paragraph to date. *See McClendon v. City of Albuquerque*, No. 95 CV 024 JAP/KBM, 2017 WL 4041588, at *2 (D.N.M. Sept. 11, 2017) ("A party may avoid a finding of contempt if it demonstrates that it attempted compliance in good faith based on a reasonable interpretation" of a court order or "has taken all reasonable steps and substantially complies with" the order) (quotation marks omitted); *see also Hallett v. Morgan*, 296 F.3d 732, 750 (9th Cir. 2002) ("Substantial compliance with the Judgment is an acceptable defense to Plaintiffs' motion for civil contempt."); *cf. Phone Directories Co. v. Clark*, 209 F. App'x 808, 815 (10th Cir. 2006) (assuming without deciding that substantial compliance is a defense in a contempt proceeding); (Doc. 3200-1 at ¶ 21 (Defendants may establish their compliance with SRSA provisions by showing sustained "substantial compliance")).

Finally, the Court will require the parties to submit briefing regarding whether in-house parolees are categorically excluded from receiving remedial relief under SRSA ¶ 17 as further described above.

In closing, the Court notes that Plaintiffs brought their motion prematurely, before they had gathered enough evidence to determine whether they could adequately support their claims for relief. It is telling that, at the April 17, 2020 hearing, Plaintiffs conceded many of their claims and lacked sufficient evidence to carry their burden as to the rest. The Court is cognizant of Plaintiffs' counsel's obligation to zealously represent their clients' interests and to ensure, to the best of their ability, that members of the Plaintiff class receive the benefits to which they are entitled under the SRSA. Nevertheless, the Court expects Plaintiffs' counsel, as experienced

litigators, to be mindful of their clients' burden of proof with respect to any relief they may seek from the Court, and to refrain from filing motions before they have gathered sufficient evidence to support them.

IT IS THEREFORE ORDERED as follows:

1.      Plaintiffs' Emergency Motion for Temporary Restraining Order and Order to Show Cause (Doc. 3224) is DENIED; and,

2.      The parties are to submit simultaneous briefing regarding whether in-house parolees are categorically excluded from receiving remedial relief under SRSA ¶ 17 no later than **Friday, May 1, 2020**.  The parties are to file response briefs, if any, by **Wednesday, May 6, 2020**.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

14