**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**DWIGHT DURAN et al.,**

    Plaintiffs,

v.                                                                                                              Civ. No. 77-00721 KK/SCY

**MICHELLE LUJAN GRISHAM et al.,**

    Defendants.

**MOTION FOR FINDING OF SUBSTANTIAL COMPLIANCE WITH
PARAGRAPH 9 OF THE SECOND REVISED SETTLEMENT AGREEMENT**

Defendants, Michelle Lujan Grisham and the New Mexico Corrections Department, through their attorneys Robles, Rael & Anaya, P.C. (Taylor S. Rahn), state the following for their Motion For Finding of Substantial Compliance with Paragraph 9 of the Second Revised Settlement Agreement[1]:

**INTRODUCTION**

This decades old lawsuit involves reforms to the New Mexico prison system. On February 14, 2020, the Court granted final approval of the Second Revised Settlement Agreement ("SRSA") setting forth all remaining obligations in this matter as well as a plan to bring this litigation to a conclusion. See **(Doc. No. 3205)**. Relevant to this Motion is, Paragraph 9 which requires:

> NMCD will ensure there is an adequate supply of safe drinking water at the Springer Correctional Center. This provision is intended to address those situations in which the local municipality has raised concerns regarding the quality of the municipal water supply. If the municipal water supply is unsafe or inadequate, NMCD will

---

[1] Pursuant to D.N.M. LR Civ. 7.1 (a), Defendants attempted to determine whether this Motion was opposed before filing. Plaintiffs oppose this Motion.

provide inmates with bottled water.

**(Doc. No. 3200-2)**, ¶4.

In regards to the exit strategy, the SRSA provides:

When the Defendants believe they have substantially complied with any of the items set forth in this Revised Settlement Agreement, they will notify the Plaintiffs in writing. The notice will state the basis for asserting substantial compliance. At any time after thirty days from this notice, the Defendants may file a motion for a finding of substantial compliance as to the item(s) addressed in the notice.

Id., ¶21.

Pursuant to the terms of the SRSA, Defendants seek a finding of substantial compliance with Paragraph 9.

## FACTUAL BACKGROUND

1. On August 19, 2019, the New Mexico Environmental Department ("NMED") entered an Administrative Order regarding water at the Springer Correctional Center ("SCC"). See *Exhibit A*.

2. NMED collected samples from two areas at SCC, the Program Building and Laundry, that exceeded the Total Trihalomethanes ("TTHM") Maximum Contaminant Level ("MCL") of .080 mg/L (or 80 μg/L). See id.,¶ 5.

3. Samples from these two areas exceeded the TTHM MCL from the third quarter of 2017 to the first quarter of 2019. See id., paragraph ¶¶6-8.

5. NMED uses Locational Running Annual Average (LRAA) to evaluate compliance, which is the location's average result over the past 4 calendar quarters. See 20.7.10.100 NMAC, (incorporating certain federal regulation); see also 40 C.F.R. § 141.2 (defining LRAA).

4. The NMED required NMCD to "[b]y October 31, 2020, comply with 20.7.10.100

NMAC [incorporating 40 C.F.R. § 141.64(b)(2)(I) and 141.620(d)], and provide drinking water with concentrations of TTHM below the MCL of 0.080 mg/L at the TIHM-1 (Programs Building) and HAAS-1 (Laundry) sampling sites." See *Exhibit A*, ¶10

5. NMED further ordered, "[b]y October 31, 2021, comply with 20.7.10.100 NMAC, NMAC [incorporating 40 C.F.R. § 141.64(b)(2)(I) and 141.620(d)], and have a LRAA for TIHM below the MCL of 0.080 mg/L at the TTHM-1 (Programs Building) and HAAS-I (Laundry) sampling sites." See id., ¶11.

6. Following the Administrative Order, NMCD was required to issue a Notice of Violation. See Notice of Violation, attached as *Exhibit B*.

7. The Notice of Violation also included a template for notice to potential users. See id., pg. 3.

8. The template notice indicates it "is not an emergency' and "[t]here is nothing you need to do. You do not need to boil your water or take corrective actions. If a situation arises where the water is no longer safe to drink, you will be notified within 24 hours." See id., pg. 4.

9. On May 6, 2020, NMCD drafted a memorandum regarding corrective action taken in response to the notice of violation. See *Exhibit C*.

10. This memorandum notes these sample areas do not contain drinking foundation or drinking areas, only restrooms and hand-washing stations. See id.

11. At no point has the NMED required NMCD to notify SCC inmates that the water was not safe to drink.

12. In June 2023, NMCD's water results triggered a Level I assessment. See letter from NMED, attached as *Exhibit D*.

13. While NMCD took the precautionary measure of providing bottled water to inmates, the NMED determined the situation was satisfactorily remedied and there was no need for further action. See id.; see also E-mail from Taylor Rahn, attached as *Exhibit E*.

14. As of Q2 2023, the LRAA for both sites subject to the NMED administrative order are .08 mg/L or below. See LRAA, attached as *Exhibit F*, also available at: https://dww.water.net.env.nm.gov/NMDWW/JSP/LRAA.jsp?tinwsys_is_number=1116&tinwsys_st_code=NM.

15. Defendants served Plaintiffs with a notice of compliance on May 23, 2023. See Certificate of Service **(Doc. No. 3341)**, filed on May 23, 2023.

## ARGUMENT

NMCD has complied with the terms of Paragraph 9. NMCD has conducted routine water sampling for several years. The most recent sampling, as evidenced by the June 2023 letter from NMED did not indicate that the drinking water was unsafe.

Plaintiffs have argued the NMED Administrative Order precludes a finding of compliance with Paragraph 9. This argument is flawed for several reasons. First, the SRSA does not specifically require compliance with NMED regulations. In fact, the SRSA refers to issues raised by the local municipality, not any other body. More importantly, however, although these areas are referred to as "drinking water" by the NMED, these two areas actually do not have drinking fountains, only restrooms and hand-washing stations. The draft notices submitted by the NMED specifically state the findings are not an emergency and consumers would be notified if the water "became" unsafe to drink, indicating it was currently safe to drink. Thus, as a practical matter, the NMED violations do not demonstrate unsafe drinking water. Additionally, the SRSA simply requires there be

"adequate safe drinking water", there is no reason to believe that an issue in two areas not used for drinking water means there is not adequate drinking water at the facility overall. Finally, Plaintiffs in the past have argued that even if individual water samples demonstrated compliance, NMCD could not reach compliance with the administrative order until the running average was at an acceptable level. NMCD continues to object to Plaintiffs assertions that the SRSA requires a minimum time of compliance prior to seeking a finding of compliance.[2] However, even assuming Plaintiffs are correct that LRAA is the paramount figure, NMCD's LRAA is currently compliant for both locations.

NMCD also anticipates that Plaintiffs will raise the recent (June 2023) water issue as a barrier to compliance. As evidenced by the NMED's letter, there was no need for any additional action

---

[2] Class counsel in a similar lawsuit made a similar argument that was rejected by the United States District Judge James A. Parker. In Jackson v. Los Lunas Ctr. for Persons with Developmental Disabilities, No. CV 87-0839 JAP/KBM, the New Mexico Department of Health moved for a finding of compliance with certain provisions of the operative settlement agreement. See id., 2020 WL 1676648, at *1 (D.N.M. Apr. 5, 2020). In opposing this request, the plaintiffs argued, *inter alia*, that a single quarter of compliance was insufficient to warrant a finding of substantial compliance especially in light of a prior history of non-compliance. See id., *3. The Court first noted, "[t]he [Settlement Agreement] prescribes all of Defendants' remaining obligations, replaces all existing orders, and governs only the period following its approval." Id. The Court then stated:

> Notably, the SA does not set a specific period for Defendants to show substantial compliance before requesting disengagement. When addressing compliance and disengagement, the SA states only that Defendants may give notice of substantial compliance and request disengagement "[w]hen the Defendants believe they have substantially implemented an Action set forth in Section III of this Settlement Agreement...." With the notice Defendants must include "the basis for the Defendants' belief that they have substantially implemented the Actions(s), including the facts then known supporting their claim of compliance."

Id., *4. (citation omitted).
   The Court's reasoning in Jackson is likewise applicable here, in fact the substantial compliance language addressed in Jackson is nearly identical to paragraph 17 of the SRSA.

regarding the original results.

Paragraph 9 does not provide a guarantee of the quality of all water at SCC, but rather only that inmates have adequate drinking water. NMCD has complied with this requirement.

## CONCLUSION

Defendant has complied with the requirements of Paragraph 9 and are entitled to a finding of substantial compliance.  The only issues in regards to the water quality at SCC, assuming the NMED test sites constitute drinking water, have been remedied. There is no minimum time frame for compliance prior to seeking a finding of substantial compliance.  NMCD has achieved compliance with paragraph 9 and should be granted the benefit of the parties' bargain.

**WHEREFORE,** Defendants request the Court enter an Order granting their Motion For Finding of Substantial Compliance with Paragraph 9 of the Second Revised Settlement Agreement, determining Paragraph 9 to be in substantial compliance, and setting the deadline for sustained compliance from six (6) months from the entry of the Court's Order.

Respectfully submitted,

ROBLES, RAEL & ANAYA, P.C.

By:     /s/ Taylor S. Rahn
       Taylor S. Rahn
       Attorney for Defendants
       500 Marquette Ave., NW, Suite 700
       Albuquerque, New Mexico 87102
       (505) 242-2228
       (505) 242-1106 (facsimile)
       taylor@roblesrael.com

I hereby certify that on this 30th day of
June 2023 the foregoing was electronically
served through the CM/ECF system to
all counsel of record.


 /s/ Taylor S. Rahn
Taylor S. Rahn